**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: __9/30/2020__

| |
|---|
| **HV ASSOCIATES, ET AL.,** |
| **Plaintiffs,** |
| **-against-** |
| **PNC BANK, N.A., ET AL.,** |
| **Defendants.** |

**19-cv-07438 (ALC)**

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiffs HV Associates LLC ("HVA"), Harshi Vashisht ("Harshi"), and her husband Vishal Vashisht ("Vishal") initiated the instant suit to seek redress for the alleged wrongful termination of Vishal by Defendant RBC Capital Markets ("CM") based on bank records that CM is alleged to have unlawfully accessed in concert with PNC, who has been dismissed from the case. CM now moves to dismiss Plaintiffs' Second Amended Complaint (SAC) and Supplemental Complaint (SC) pursuant to Federal Rule of Civil Procedure 12(b)(6) as untimely and for failure to state a claim. For the reasons that follow, CM's motion to dismiss is **GRANTED**.

## FACTUAL BACKGROUND

Sometime in March 2010, Vishal accepted an offer of employment from CM, a wholly-owned subsidiary of the RoyalBank of Canada ("RBC"), which provides expertise in banking, finance and capital markets. Upon accepting the position with CM, Plaintiffs Harshi, Vishal, and

their children moved from New Jersey to Toronto, Canada. Harshi owns plaintiff HVA, a staffing services company located in Hoboken, New Jersey.

In March 2012, CM LLC began an internal investigation involving Vishal and Aardeetek Systems, an outside staffing company owned by Vishal's sister-in-law. The internal investigation subsequently evolved to include another staffing vendor called Techno-Comp, Inc. ("TCI"), owned by non-parties Sanjay and Sashi Gundala. The investigation into TCI regarded kickbacks that TCI had allegedly paid to HVA in exchange for Vishal exploiting his position at CM to ensure that RBC employed TCI contractors. As part of that investigation, by an April 2012 letter to TCI, CM invoked its rights under the vendor contract to request an audit of TCI's financial transactions. TCI refused to comply with CM's audit request, and instead terminated its vendor relationship with CM.

CM terminated Vishal's employment on or about April 13, 2012. At or about the time of his termination, the accounts that Harshi and Vishal maintained at RBC were frozen for approximately 10 months. Plaintiffs allege this violated the terms of the RBC Client Agreement. Their accounts were also closed at PNC, which Plaintiffs allege violated the PNC Personal and Business Account Agreements. Because Vishal's termination was for cause, he received no severance, no garden leave, no prorated bonus, no relocation expense reimbursement and nothing for his equity interest in RBC (that was worth about $300,000 at the time), totaling approximately $1 million, all of which would have been owed pursuant to the Offer Letter had Vishal been discharged without cause. Plaintiffs and their children relocated from Canada back to New Jersey. In April 2013, Vishal began a position at Barclays at substantially less pay than what he earned at CM. This was the only banking job whose application process did not require Vishal to disclose whether he had ever been fired for cause.

Sometime after Vishal's dismissal, in June 2012, CM sent Plaintiffs and TCI a "Draft Complaint"—which was not subsequently filed in court—in which CM alleged that Plaintiffs had received fraudulent kickbacks from TCI, in violation of various state laws and contractual obligations. In the Draft Complaint, CM[1] stated that "information obtained in RBC's investigation from bank alert resources" had revealed that TCI issued thirteen checks from its Bank of America checking account, payable to HVA for $20,000 each, which were deposited into HVA's business account at PNC between August 2011 and March 2012, and subsequently used to pay for Harshi's personal expenses. ECF No. 85, Ex. D (Excerpt of Draft Complaint) ¶¶ 23, 29.

Vishal had not been questioned about these checks prior to his termination. Had he been asked by CM, he would have explained that the "checks from TCI to HVA were not improper payments but legitimate payments relating to a real estate transaction in India between Gundala and Harshi's father that had nothing to do with [CM], and with which Vishal was not involved." SAC ¶ 65. Nor had Plaintiffs authorized CM to access any of their bank information.

Plaintiffs contend, by process of elimination, that the information regarding these checks was improperly disclosed by PNC, where HVA maintained a business account and Harshi and Vishal had personal accounts, to CM. Plaintiffs allege that the information "did not come from Bank of America because Bank of America did not subsequently close TCI's account(s) and, moreover, the Vashishts were able to open an account with that bank later in 2012." SAC ¶ 59. Plaintiffs further allege that "[i]t is apparent that TCI also did not provide the information to [CM]. Although TCI had access to the checks it paid to HVA, it did not have access to HVA's outgoing checks—including those mentioned by [CM] in the draft complaint prepared by [CM's]

---

[1] As the New Jersey Court noted, while Plaintiffs assert that the Draft Complaint was drafted by CM, the only Plaintiff identified in the Draft Complaint is RBC. ECF No. 105 at 3 n.5.

attorney[.]" SAC ¶ 60. CM allegedly otherwise lacked access to these banking records because neither TCI nor HVA banked with RBC, and TCI had terminated its vendor relationship with RBC after it refused RBC's audit request under the terms of the vendor contract.

Plaintiffs also point to other circumstantial evidence to support their allegation that PNC improperly disclosed their banking information to CM, including PNC's parent company acquiring the American retail business of RBC around the time the Vashishts' information was allegedly shared in 2012, and PNC abruptly breaking off LinkedIn discussions about a possible position for Vishal in June 2012. According to Plaintiff's, PNC's disclosure violated the 2007 and 2012 Business Account Agreement, as well as PNC's 2012 Personal Account Agreement (together, "PNC Agreements").

Initially, Plaintiffs did not pursue any claims in court "because they did not want to repeat in a public forum the false accusations made against them by RBC and/or [CM] due to a well-founded and reasonable concern that it would interfere with their ability to find comparable employment in the banking industry and, in particular, in the regulatory area which is Harshi's area of expertise." SAC ¶ 147. However, Plaintiffs did engage in negotiations with CM to try to clear Vishal's name and determine how CM had come to have the checks on which Vishal's dismissal was predicated. Plaintiffs say that "[f]or years [they] repeatedly requested [PNC and CM] to produce copies of any bank alert or 314(b) Request concerning Plaintiffs' bank accounts, but [PNC and CM] steadfastly refused to do so and, moreover, failed to acknowledge that there were none." SAC ¶ 2. For example, on February 22, 2013, Plaintiffs' counsel met with CM to discuss changing Vishal's record to indicate that he was not terminated for cause, as well as how CM had accessed checks from Plaintiffs' account. By email on April 18, 2013, Plaintiffs' counsel

stated that Defendant had "taken the fifth" at that meeting and was not being "truthful" about whether they invaded Plaintiffs' privacy. SAC ¶ 102.

The Draft Complaint's contents did eventually become public. In April 2017, non-party Sanjay Gundala, co-owner of TCI, filed a Complaint (the "Gundala Complaint") against Harshi, Vishal, HVA, and other non-parties in New Jersey state court concerning an unrelated real estate transaction. According to Plaintiffs, the Gundala Complaint "repeats the defamatory statements from the Draft Complaint" and "published those defamatory statements in a public forum available to everyone including, but not limited to, the then-current and prospective employers of Harshi and Vishal." SAC ¶ 146.

On June 12, 2018, Plaintiffs submitted a Freedom of Information Act ("FOIA") request to FinCEN concerning "any 'bank alerts' or 314(b) Requests relating to this lawsuit". SAC ¶ 128. This was over five years after the February 22, 2013 meeting at which Plaintiffs deemed CM to be "untruthful" about whether they had invaded Plaintiffs privacy in accessing their bank account. At that time Plaintiffs had already initiated this lawsuit—though CM would not become a party until the filing of the Second Amended Complaint on June 25, 2018. On June 27, 2018, in response to the FOIA request, the Department of Treasury confirmed that neither PNC nor [CM] had submitted a 314(b) Request. SC ¶ 12; Exhibit I.

PROCEDURAL HISTORY

Plaintiffs Harshi and HVA filed their Complaint in the Superior Court of New Jersey in September 2017, listing PNC Financial Services Group ("PNC Financial") as the sole defendant. PNC Financial removed the action to the United States District Court of New Jersey in October 2017, where the matter was assigned to the Honorable Stanley R. Chesler. ECF No. 1. On December 4, 2017, Plaintiffs HVA and Harshi filed an Amended Complaint which substituted

PNC Financial with PNC and joined the Royal Bank of Canada ("RBC") as a Defendant. See ECF No. 16. Therein Plaintiffs alleged various claims related to the alleged improper disclosure of their account information by PNC to RBC, and the allegations of a kickback scheme in the Draft Complaint.

By orders issued March 8, 2018 and May 4, 2018, Judge Chesler granted PNC's motion to dismiss the Amended Complaint pursuant to 12(b)(6) and dismissed all claims against PNC. *See* ECF No. 30, 41. On April 10, 2018, Judge Chesler granted RBC's motion to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), and dismissed RBC as a Defendant. See ECF No. 38.

On June 25, 2018, Plaintiffs filed a Second Amended Complaint, adding Vishal as a Plaintiff and adding CM as a Defendant. See ECF No. 46. As to CM, the Second Amended Complaint asserts: fraud/fraudulent concealment (Count I); civil conspiracy to invade Plaintiffs' privacy with PNC (Count II); breach of contract by CM related to Vishal's Offer Letter (Count III); wrongful dismissal (Count IV); compelled defamation (Count V); tortious interference with economic advantage (Count VI) and contract (Count VII – RBC Client Agreement, XI – RBC Client Agreement, XII – PNC Agreements); and common law    invasion   of   privacy   and disclosure of confidential information (Count VIII).

The Second Amended Complaint asserts five causes of action against PNC, for: fraud/fraudulent concealment (Count I); civil conspiracy to invade Plaintiffs' privacy with CM (Count II); common law invasion of privacy and disclosure of confidential information for disclosure of Plaintiffs' account information (Count VIII); breach of contract related to confidentiality of Plaintiffs' accounts (Count IX); and breach of the implied covenant of good faith and fair dealing in the same contracts (Count X).

On November 27, 2018, Plaintiffs filed a Supplemental Complaint, which they assert further bolsters the causes of action alleged in their Second Amended Complaint. See ECF No. 75. The Supplemental Complaint includes further factual allegations, including the response to the FOIA request to FinCen indicating that FinCen found no 314(b) requests related to this case, and admissions from PNC.

On December 6, 2018, CM moved to dismiss the Second Amended Complaint claims under 12(b)(2) and 12(b)(6). ECF No. 77. However, by order issued April 18, 2019, Judge Chesler concluded that the New Jersey District Court did not have specific jurisdiction over CM, and Plaintiffs had not shown it had general jurisdiction. ECF No. 105 at 9-14. He therefore reserved a decision on CM's motion to dismiss to permit limited jurisdictional discovery regarding the location of the "nerve center" of CM for purposes of general jurisdiction. ECF No. 105 at 25. By an opinion dated May 20, 2019, Judge Chesler dismissed all claims against PNC in the Second Amended Complaint. ECF No. 114.

By order issued August 7, 2019, Judge Chesler concluded that the District Court of New Jersey did not have personal jurisdiction over CM and transferred the matter to the Southern District of New York. ECF No. 125.

On November 19, 2019, Defendant CM moved this Court to dismiss Plaintiffs' Second Amended Complaint under 12(b)(6) on statute of limitations grounds and for failure to state a claim. ECF Nos. 133-35. On December 10, 2019, Plaintiffs opposed that motion. ECF No. 137. CM replied on December 17, 2019. ECF No. 138.

STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). On a motion to dismiss, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in the plaintiff's favor. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). But to satisfy Rule 12(b)(6), a plaintiff must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010). Ultimately, on a motion to dismiss "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (internal quotations and citation omitted).

"A motion to dismiss on statute of limitations grounds generally is treated as a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6)[.]" *Nghiem v. U.S. Dep't of Veterans Affairs,* 451 F.Supp.2d 599, 602–03 (S.D.N.Y.2006), *aff'd,* 323 Fed.Appx. 16 (2d Cir.2009). Statute of limitations defenses are affirmative defenses and may be made at the motion to dismiss stage, without conversion to a motion for summary judgment, where the "plaintiff adequately states a claim, but [the] plaintiff's own allegations show that the defense exists." *Id.* at 603 (internal quotation marks omitted). Motions to dismiss on statute of limitations grounds are treated as other motions to dismiss; courts merely are to "determine whether the complaint itself is legally sufficient" to survive the affirmative defense, "not to weigh the evidence that may be presented at a trial." *Adams v. Crystal City Marriott Hotel,* No. 02-CV-10258, 2004 WL 744489, at *8 (S.D.N.Y. Apr. 6, 2004).

DISCUSSION

The Court will first consider whether, as Defendant contends, Plaintiffs' claims are time-barred. For the reasons below, the Court concludes that Plaintiffs' claims for civil conspiracy to invade Plaintiffs' privacy with PNC (Count II); breach of contract by CM related to Vishal's Offer Letter (Count III); wrongful dismissal (Count IV); tortious interference with prospective economic advantage (Count VI) and contract (Count VII – RBC Client Agreement, XI – RBC Client Agreement, XII – PNC Agreements); and common law invasion of privacy and disclosure of confidential information for accessing Plaintiffs' PNC accounts (Count VIII) are indeed time-barred. These claims must therefore be dismissed. Next, the Court considers whether Plaintiffs fail to state a claim for fraud/fraudulent concealment (Count I) and compelled defamation from Vishal's need to tell future employees he was fired for cause (Count V). For the reasons below, the Court concludes that Plaintiffs have failed to state a claim as to those two counts. Plaintiffs' Second Amended Complaint is therefore **DISMISSED** in its entirety. The Court also **DENIES** Plaintiffs leave to amend the Second Amended Complaint.

I.      Statutes of Limitations

New York courts generally apply New York's statutes of limitations, even when the injury giving rise to the action occurred outside New York. *See Stafford v. International Harvester Co.*, 668 F.2d 142, 147 (2d Cir. 1981). This general rule, however, is subject to a traditional statutory exception, New York's "borrowing" statute, C.P.L.R. § 202. Under C.P.L.R. § 202, when a nonresident plaintiff sues upon a cause of action that arose outside of New York, the court must apply the shorter limitations period, including all relevant tolling provisions, of either: (1) New York; or (2) the state where the cause of action accrued. *See* N.Y. C.P.L.R. § 202; *See Stuart v. Am. Cyanamid Co., 158 F.3d 622*, 626-27 (2d Cir. 1998).  "New York follows 'the traditional

definition of accrual—a cause of action accrues at the time and in the place of the injury.'" *Cantor Fitzgerald v. Lutnick*, 313 F.3d 704, 710 (2d Cir. 2002) (citing *Global Fin. Corp. v. Triarc Corp.*, 715 N.E.2d 482, 485 (N.Y. 1999)).

"Because the statute of limitations is an affirmative defense, the defendant bears the burden of establishing by prima facie proof that the limitations period has expired since the plaintiff's claims accrued. . . . . The burden then shifts to the plaintiff to establish that the limitations period should be tolled." *Overall v. Estate of Klotz*, 52 F.3d 398, 403 (2d Cir. 1995) (citations omitted).

A.    Breach of Contract (Count III)

Plaintiffs' breach of contract claim, which is based on CM's alleged wrongful withholding of benefits due Vishal upon a no-cause termination pursuant to his Offer Letter under the guise of his improper for-cause termination, is time-barred.

As an initial matter, the Parties disagree on where the breach of contract claim accrued. Defendant argues that this claim accrued in Ontario and must be dismissed under Ontario's two-year statute of limitations. Plaintiffs argue that this claim "is based upon his offer letter . . . that it is governed by New York Law" and "therefore, has a six-year statute of limitation. C.P.L.R. §213(2)." Opp. at 17.[2]

---

[2] Even if New York law applied, Count III would still be time-barred. Plaintiffs concede that the June 25, 2018 filing is untimely because "Vishal was terminated on April 13, 2012 [and he] therefore had six years, until April 12, 2018, to pursue his contract claims under C.P.L.R. §213(2)." Opp. at 17. Plaintiffs attempt to rely on a Tolling Agreement signed with RBC fails. The Tolling Agreement provides that "[t]he period from July 17, 2017 through the earlier of (a) August 31, 2017 or (b) the date of receipt of written notice sent by either Party to the other terminating the tolling period, inclusive, shall not be included in computing the running of any statute of limitations applicable to any potential claims between the Parties (the 'Tolling Period)." ECF No. 51-3 (Ex. A. Tolling Agreement) at ¶ 1. But, RBC, not CM is the signor of that agreement, which specifically states that it is "not intended to affect any claims by or against third parties." ECF No. ECF No. 51-3 (Ex. A. Tolling Agreement) at ¶ 6. Even if the agreement did bind CM, the tolling

The Court concludes that the breach of contract claim accrued at the time of Vishal's termination, April 13, 2012, while he was a resident of Toronto. *See ABB Indus. Sys., Inc. v. Prime Tech., Inc.,* 120 F.3d 351, 360 (2d Cir.1997) ("[I]t is well settled that [under New York law] the statute of limitation for breach of contract begins to run from the day the contract was breached, not from the day the breach was discovered, or should have been discovered."). Under New York's borrowing statute, the 2-year Toronto statute of limitations applies. This claim was filed on June 25, 2018, well over two years after Vishal's firing. It is therefore untimely and must be dismissed.

B.      Tortious Interference with Prospective Economic Advantage (Count VI) and Contract (Counts VII – RBC Client Agreement, XI – RBC Client Agreement, XII – PNC Agreements)

For the reasons that follow, the Court also concludes that Plaintiffs' tortious interference with prospective economic advantage claim, based on Vishal having to explain his for-cause termination to future employers, is time-barred. Vishal does not allege any other conduct related to CM's interference with its future employers, apart from labeling his termination as for-cause. Plaintiffs' tortious interference with contract claims are also time-barred. These allege that CM interfered with Plaintiffs' contracts with RBC and PNC related to their bank accounts at those institutions, by improperly seeking confidential information about Plaintiffs' accounts, leading to Plaintiffs' accounts being frozen or closed.

It is long established that for purposes of applying the New York borrowing statute, a cause of action in tort accrues at the "place of injury." *See Stafford v. International Harvester Co.*, 668

---

period does not bridge the gap between the date by which Plaintiffs concede a breach of contract claim had to be filed, April 12, 2018, and the date on which the breach of contract claim was filed, June 25, 2018.

F.2d 142, 154 (2d Cir. 1981); *Sack v. Low*, 478 F.2d 360, 365-68 (2d Cir. 1973). Toronto, the place where Plaintiff was located at the time of the alleged tortious interference, is the place of injury. See *2002 Lawrence R. Buchalter Alaska Tr. v. Philadelphia Fin. Life Assur. Co.*, 96 F. Supp. 3d 182, 217 (S.D.N.Y. 2015) ("A tort occurs in the place where the injury was inflicted, which is generally where the plaintiffs are located.") (collecting cases). The Court therefore concludes that Ontario's two-year statute of limitations applies.

Plaintiffs assert that these claims accrued in New York but does so unaided by any allegations in the Second Amended Complaint. Plaintiffs simply states that the tortious interference, and other claims, "all arose from actions taken by CM in New York." Opp. at 15. But, the lone mention of New York in the Second Amended Complaint and Supplemental Complaint is that the Offer Letter provides that "[i]f [Vishal] were terminated other than for cause, [CM] would cover the cost of relocating him and his family from Canada back to the New York City area." SAC ¶ 21.

Still, even if Plaintiffs were to plead New York actions by CM, this would not change the Court's analysis. That is because "when 'the defendant's . . . conduct occurs in one jurisdiction and the plaintiff's injuries are suffered in another, the place of the wrong is considered to be the place where the last event necessary to make the actor liable occurred.'" *Discover Grp., Inc. v. Lexmark Int'l, Inc.*, 333 F. Supp. 2d 78, 85 (E.D.N.Y. 2004) (citing *Frink Am. Inc. v. Champion Road Mach. Ltd.,* 48 F.Supp.2d 198, 205 (N.D.N.Y.1999)). The tort of tortious interference with contract requires that the plaintiff suffer damages, which is the last event that would render a putative tortfeasor liable. *Id.* Here, Plaintiffs were damaged where they resided at the time: Toronto.[3]

---

[3] Plaintiffs assert that there may be a choice of law provision contained in one of the RBC Client Agreements or the PNC Agreements that calls for a different statute of limitations. Opp. at 18.

Having concluded that Defendant has carried its burden to show that the Ontario statute of limitations applies, and has expired, the Court now considers Plaintiffs' tolling argument. Plaintiffs argue that "[CM and PNC's] fraudulent concealment of their sharing of confidential banking information and conspiracy to cover-up that wrongdoing" tolls the statute of limitations. Opp. at 19 n.7. However, the Court concludes that tolling is not warranted here because Plaintiffs fail to show they were inhibited from pursuing any claim by CM's alleged concealment.

Plaintiffs urge the Court to apply either equitable tolling or equitable estoppel, under New York law (rather than Ontario's). Opp. at 11. However, "[w]hen applying another state's statute of limitations pursuant to N.Y. C.P.L.R. 202, '[a]ll the extensions and tolls applied in the foreign state must be imported with the foreign statutory period, so that the entire foreign statute of limitations . . . applie[s], and not merely its period.'" *Thea v. Kleinhandler*, 807 F.3d 492, 500 (2d Cir. 2015) (applying California's equitable estoppel law where California statute of limitations was borrowed) (citations omitted). While the Parties did brief a question of statutory tolling under Ontario law, the Parties have not briefed Ontario law on equitable estoppel or equitable tolling. Rather, both Parties have relied on New York law. *See* e.g., Opp. at 11; Reply at 1-3. The Court will therefore apply New York law, assuming either that it is the same as Ontario law, or that the parties have consented to its application. *See Krumme v. Westpoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) ("The parties' briefs assume that New York law controls, and such 'implied consent . . . is sufficient to establish choice of law.'") (citing *Tehran-Berkeley Civil & Envtl. Eng'rs v. Tippetts-Abbett-McCarthy-Stratton*, 888 F.2d 239, 242 (2d Cir. 1989)); *see also Loebig v. Larucci*, 572 F.2d 81, 85-86 (2d Cir. 1978) (Stating that "[i]n cases involving the law of common law

---

Even apart from its speculative nature, this argument fails because even if there were a choice of law provision, it would not bind CM, who is not a party to the contracts.

countries, New York courts generally assume that the foreign law is the same as New York law" and concluding that parties had "at least acquiesced in the application of New York law by their failure to prove [foreign law] and their requests to charge based on New York law."); *see also Bartsch v. Metro-Goldwyn-Mayer, Inc.*, 391 F.2d 150, 155 n.3 (2d Cir. 1968) ("Since neither party has suggested that German law differs from New York law in any relevant respect, we have not embarked on an independent investigation of the matter.) (citing *El Hoss Engineering & Transportation Co. v. American Independent Oil Co.*, 183 F. Supp. 394, 399 (S.D.N.Y. 1960), *rev'd on other grounds*, 289 F.2d 346 (2 Cir.), *cert. denied*, 368 U.S. 837 (1961)).

"Under New York law, the doctrines of equitable tolling or equitable estoppel may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) (internal quotation marks omitted). A statute of limitations may be tolled due to the defendant's fraudulent concealment if the plaintiff establishes that "the defendant wrongfully concealed material facts," which "prevented plaintiff's discovery of the nature of the claim," and that "plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012) (internal quotation marks omitted). "[U]nder New York law, equitable estoppel is available only where the plaintiff knew of the existence of the cause of action, but the defendant's misconduct caused the plaintiff to delay in bringing suit." *Thea v. Kleinhandler*, 807 F.3d 492, 501 n.11 (2d Cir. 2015). It is clear from the face of the Second Amended Complaint, that neither doctrine is applicable here.

Plaintiffs put forth an unpersuasive equitable tolling argument. Plaintiffs allege that "[f]or years Plaintiffs repeatedly requested [CM and PNC] to produce copies of any bank alert or 314(b)

Request concerning Plaintiffs' bank accounts, but [CM and PNC] steadfastly refused to do so and, moreover, failed to acknowledge that there were none." SAC ¶ 2. They contend that "until the admission by PNC that there were no 314(b) Requests, as also recently confirmed by FinCEN, and PNC's other blockbuster admissions, that there were no 'bank alerts' and that it has no records concerning why it closed Plaintiffs' bank accounts, the statute of limitations relating to these claims were tolled due to the Bank's fraudulent concealment." Opp. at 25. The suggestion that the claims were fraudulently concealed beyond the time at which Plaintiffs filed their initial complaint raising them plainly fails.

Even when generously interpreted, Plaintiffs' equitable tolling argument fails to persuade because it is refuted by Plaintiffs' own allegations. The Second Amended Complaint alleges that CM did not discuss the checks it had accessed with Vishal prior to terminating him. SAC ¶¶ 65-66. The Second Amended Complaint does not indicate a date certain when Plaintiffs became aware that Defendant had accessed their bank records. It must have been sometime after June 1, 2012, the date on the Draft Complaint, and before February 22, 2013, when Plaintiffs' counsel met with CM. At that meeting, Plaintiffs' counsel "requested that (1) [CM] change its records to reflect that Vishal was not terminated for cause or, in the alternative, (2) that an internal memorandum be sent to Vishal's former group and others that Vishal was not terminated due to improper payments and instructing them not to discuss his termination". SAC ¶ 99. This was also the first occasion that Plaintiffs specifically pleaded they asked CM how it gained access to Plaintiffs' bank records. According to an email dated April 18, 2013, at that meeting Defendant "took the fifth" on the issue and was not being "truthful" about whether CM invaded Plaintiffs' privacy. SAC ¶ 102. Therefore, Plaintiffs' own allegations indicate that by no later than April 18, 2013 they had become incredulous of CM's denials of wrongdoing.

It is also plain from the Second Amended Complaint that the alleged denials of wrongdoing by CM did not deprive Plaintiffs of any information they needed to diligently pursue their claim. After all, Plaintiffs' theory is that "[a] 314(b) Request is the only lawful means by which [CM and PNC] could have exchanged Plaintiffs' private and confidential banking information without Plaintiffs' authorization." SAC ¶ 2. Plaintiffs of course knew they had not given authorization for CM to access any of their bank accounts. Plaintiffs had the ability to determine whether there had been a 314(a) Request related to their account, which they believed was the only not-illegal route Defendants may have taken to their bank information, without CM's cooperation. This is clear because they eventually did just this. "On June 12, 2018, Plaintiffs submitted a Freedom of Information Act ("FOIA") request to FinCEN concerning any 'bank alerts' or 314(b) Requests relating to this lawsuit". SAC ¶ 128. By June 27, 2018, Plaintiffs received a response from FinCEN stating that no such alerts had been found. SC, Exhibit I: Letter from Financial Crimes Enforcement Network, dated June 27, 2018. Because Plaintiffs had all the information they needed to pursue a FOIA request by the time they got the Draft Complaint, at the latest February 22, 2013, the Court concludes no equitable tolling is due.

Nor is equitable estoppel applicable here. As Judge Chesler held in his May 20, 2019 opinion, "the Second Amended Complaint specifically admits that Plaintiffs' reason for not pursuing their claims earlier was 'because they did not want to repeat in a public forum the false accusations made against them by RBC and/or [CM] due to a well-founded and reasonable concern that it would interfere with their ability to find comparable employment in the banking industry and, in particular, in the regulatory area which is Harshi's area of expertise.'" ECF No. 114 at 16 (citing SAC ¶ 147). This Court concludes, as Judge Chesler did, that Plaintiffs' "judicial admission in the Second Amended Complaint is sufficient to demonstrate that Plaintiffs' failure to file a

timely complaint was not due to Defendant's fraudulent concealment but because they made their own tactical decision not to pursue claims that they admittedly knew about." ECF No. 114 at 16. Plaintiffs' argument for equitable estoppel therefore fails.

Having concluded that neither equitable tolling nor equitable estoppel is applicable[4], the Court concludes that Plaintiffs' tortious interference claims are untimely.

C.    Common Law Invasion of Privacy and Disclosure of Confidential Information (Count VIII)

Plaintiffs' invasion of privacy and disclosure of confidential information claims are time-barred. These claims are brought pursuant to New Jersey's Constitution and New Jersey common law, which Plaintiffs contend create a right of privacy with regard to Plaintiffs' personal bank account records at PNC. SAC ¶ 9. Plaintiffs have conceded in prior briefing that the statute of limitations for such claim is 2 years in New Jersey. ECF No. 41 at 4 (citing ECF Nos. 29, 21.) For that reason, Judge Chesler has dismissed substantively identical claims as to PNC and RBC three times. ECF No. 38 at 12; ECF No. 41 at 5-6; ECF No. 114 at 13. Plaintiffs urge the Court that equitable tolling makes this claim timely. However, as explained above, even making the improbable assumption that Plaintiffs first became aware of the Draft Complaint, and the fact that their bank information had been disclosed, on February 22, 2013, Plaintiffs' claim is still untimely. It was filed June 25, 2018, over five years later.

D.    Civil Conspiracy (Count II)

The Court concludes that Plaintiffs' claim for civil conspiracy is time-barred. Plaintiffs allege that CM and Defendants "conspired and agreed to commit unlawful acts, including invading

---

[4] For the same reasons, Plaintiffs contention that these doctrines are applicable to Plaintiffs' claims for fraud/fraudulent concealment (Count I) and civil conspiracy (Count II), Opp. at 19 n.7, fails.

Harshi's and Vishal's privacy, obtaining HVA's confidential business and banking records, reviewing and producing Plaintiffs' private and confidential banking records and information, and took a number of overt acts in furtherance of that agreement . . . , without FinCEN's knowledge and approval. . . ." SAC ¶ 168. The Parties agree that the statute of limitations for a civil conspiracy claim is the same as the underlying offense. Mot. at 15, Opp. at 20, 21. Plaintiffs appear to put forth several underlying offenses for their civil conspiracy claim: invasion of privacy, breach of PNC's contract; tortious interference with PNC's contract; and fraud/ fraudulent concealment. Opp. 20.

But, regardless of what the underlying offense is, Plaintiffs' civil conspiracy claim is time-barred or otherwise fails. Invasion of privacy hews most closely to what Plaintiffs actually pleaded in its Second Amended Complaint. Because, as discussed above, the invasion of privacy claim is time-barred, so too is a claim for civil conspiracy to commit that offense. The same logic applies if Plaintiffs' civil conspiracy claim is predicated on the tortious interference claims that the Court has already concluded are untimely. Even assuming the other possible underlying offenses, breach of PNC's contract and fraud/fraudulent concealment are not time-barred, they fail for another reason. Judge Chesler concluded that Plaintiffs failed to state a claim that PNC had breached its contract or engaged in fraud or fraudulent concealment. ECF No. 114 at 8-11, 17-22. Simply, there is no actionable wrong in which CM might have conspired.

Plaintiffs' civil conspiracy claim therefore must be dismissed.

E.    Wrongful dismissal (Count IV)

Plaintiffs' claim for wrongful dismissal is time-barred. The Parties agree that this claim accrued in Toronto, at the time of Vishal's firing, and is therefore subject to Ontario's two-year statute of limitations. *See* Mot. at 2, Opp. at 15. Vishal was terminated on February 12, 2012.

18

Absent tolling, the statute of limitations was well expired by June 25, 2018, when this claim was first asserted against CM.

Plaintiffs contend that the wrongful termination claim should be tolled pursuant to Sec. 5 of the Ontario Limitations Act, 2002, S.O. 2002, c.24, Sched. B (the "OLA"). Section 5 of the OLA provides:

> 5.(1) A claim is discovered on the earlier of,
>   (a) the day on which the person with the claim first knew,
>       (i) that the injury, loss or damage had occurred,
>       (ii) that the injury, loss or damage was caused by or contributed to by an act or omission,
>       (iii) that the act or omission was that of the person against whom the claim is made, and
>       (iv) that, having regard to the nature of the injury, loss or damage, a proceeding would be an appropriate means to seek to remedy it; and
>   (b) the day on which a reasonable person with the abilities and in the circumstances of the person with the claim first ought to have known of the matters referred to in clause (a).
> 5.(2) A person with a claim shall be presumed to have known of the matters referred to in clause (1)(a) on the day the act or omission on which the claim is based took place, unless the contrary is proved.

According to Plaintiffs, "litigation was not 'an appropriate means to seek to remedy' [for Vishal's] wrongful dismissal at least until the Gundala suit was filed." Opp. at 17. This is because "[b]efore that filing, CM, to Vishal's knowledge, had not publicly disclosed those allegations of criminal wrongdoing contained in the Draft Complaint, and Vishal was unable to pursue his claims in Court without making CM's false claims public, which would have interfered with him ever obtaining another banking position." Opp. at 17.

But this interpretation of the "appropriate" inquiry is not supported by the case law on which Plaintiffs claim to rely. Plaintiffs assert that *Presidential MSH Corp. v. Marr, Foster & Co., LLP*, 2017 ONCA 325 (Ont. C.A.), supports the application of tolling in this case. There, an Ontario Court considered whether a claim disputing the denial of certain tax credits by the Canada

Revenue Agency was time-barred because it was filed "more than two years after the initial denial by CRA of the credits, but within two years of CRA's refusal to alter the assessments in response to the Notice of Objection." *Id.* at ¶ 42. *Presidential* sets forth principles to guide the case-specific determination of when a claim is "appropriate" with the meaning of Section 5(1)(a)(iv). *Presidential* draws on *Brown v. Baum*, 2016 ONCA 325 (Ont. CA.)—on which Plaintiffs also purport to rely. From *Brown*, *Presidential* derives the principal that "a legal proceeding against an expert professional may not be appropriate if the claim arose out of the professional's alleged wrongdoing but may be resolved by the professional himself or herself without recourse to the courts, rendering the proceeding unnecessary." *Id.* at ¶ 20. Litigation may also be inappropriate "[i]f the claim is the kind of claim that can be remedied by another and more effective method provided for in the statute" until after "that other method has been used". *Id.* at ¶ 32. Finally, "if a plaintiff relies on the exhaustion of some alternative process, such as an administrative or other process, as suspending the discovery of its claim, the date on which that alternative process has run its course or is exhausted must be reasonably certain or ascertainable by a court." *Id.* at ¶ 48. "[A] plaintiff could not claim it was appropriate to delay the start of the limitation period for tactical reasons, or in circumstances that would later require the court to decide when settlement discussions had become fruitless". *Id.* at ¶ 47. Applying these principles, the *Presidential* Court concluded that "the proceeding was not appropriate, and the plaintiff's underlying claim was not discovered, until May 2011, when the CRA responded to the appellant's Notice of Objection and advised that it intended to confirm its initial assessments". *Id.* at ¶ 49.

Contrary to Plaintiffs' assertions that *Brown* and *Presidential* support the conclusion that litigation of his wrongful dismissal claim was not "appropriate" at the time of his firing, the cases appear virtually irrelevant to the instant case. As the *Presidential* Court explained, "Section

5(1)(a)(iv) comes into focus where the plaintiff knew or ought reasonably to have known of his or her loss and the defendant's causal act or omission, but the plaintiff contends the limitation period was suspended because a proceeding would be premature." *Id.* ¶ 27. There is no argument here that Vishal's claim would have been premature. Rather, Vishal concluded that it would be disadvantageous to proceed with the claim and further publicize the alleged reason for his termination. Plaintiffs' argument that litigation was not "appropriate" within the meaning of Section 5(1)(a)(iv) does not hold water.

In light of Plaintiffs' failure to demonstrate any applicable ground for tolling under Ontario law, the Court therefore concludes that Plaintiffs' wrongful termination claim is time-barred by the 2-year Ontario statute of limitations.

II.     Failure to State a Claim

The Court now considers the two remaining counts in Plaintiffs' Second Amended Complaint: fraud/fraudulent concealment (Count I) and compelled defamation (Count VIII). For the reasons that follow, the Court concludes Plaintiffs have failed to state a claim as to both Counts, and they must therefore be dismissed.

A.     Fraud/ Fraudulent Concealment (Count I)

"Under New York law, '[t]o state a cause of action for fraud, a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 291 (2d Cir. 2006) (citing *Kaufman v. Cohen,* 307 A.D.2d 113, 119 (1st Dep't 2003)). "Alternatively, instead of an affirmative misrepresentation, a fraud cause of action may be predicated on acts of concealment where the defendant had a duty

to disclose material information." *Kaufman v. Cohen*, 307 A.D.2d 113, 119-20 (2003) (citing *Swersky v. Dreyer and Traub,* 219 A.D.2d 321, 326, *appeal withdrawn* 89 N.Y.2d 983)). New Jersey law parallels New York law for both fraud and fraudulent concealment. *Zorba Contractors, Inc. v. Hous. Auth., City of Newark*, 362 N.J.Super. 124, 827 A.2d 313, 322 (2003) ("To establish a claim for common-law fraud, a plaintiff must demonstrate that: (1) defendant made a material misrepresentation or omission of fact; (2) knowing the misrepresentation to be false or the omission to be material, and intending the other party to rely on it; and (3) the other party did in fact rely on the misrepresentation or omission to its detriment." (citation omitted)); *Warwick Dev., LLC v. McGruder*, No. L–0409–13, 2014 WL 2197939, at *1 (N.J.App.Div. May 28, 2014) (duty to disclose is required to state a claim for fraudulent concealment).

Under either New York or New Jersey law, Plaintiffs have failed to state a claim for either fraud or fraudulent concealment because they have not pleaded reliance. Rather, as discussed above, Plaintiffs make clear that they knew they could not rely on CM's account of how they came to have Plaintiffs' bank information by April 18, 2013. In light of Plaintiffs' admission that at the time of CM's first alleged act of concealment they did not rely on CM's representation, the Court need not parse the later alleged acts of concealment.

Furthermore, Plaintiffs' fraudulent concealment claim fails for another reason. They have pleaded no facts that indicate CM has a duty to disclose to Plaintiffs, as is required under either New York or New Jersey law. Plaintiffs have not alleged any facts showing more than an ordinary business relationship. This does not suffice. *See Grumman Allied Indus., Inc.* v. *Rohr Indus., Inc.,* 748 F.2d 729, 739 (2d Cir. 1984) (holding an ordinary, arm's length business relationship did not give rise to a duty to disclose); *See also Lightning Lube v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir. 1993) ("But where a claim for fraud is based on silence or concealment, New Jersey courts will

not imply a duty to disclose, unless such disclosure is necessary to make a previous statement true or the parties share a 'special relationship'.")

Plaintiffs' claims for fraud and fraudulent concealment must therefore be dismissed.

B.    Compelled Defamation (Count V)

Next, the Court considers whether Plaintiffs have stated a claim for compelled defamation. It is undisputed that this claim is governed by New York law—and not recognized under New York law. The Court will dismiss this claim.

To establish a claim for defamation under New York law, a plaintiff must prove that: (1) the defendant published a defamatory statement of fact to a third party, (2) that the statement of fact was false, (3) the false statement of fact was made with the applicable level of fault, and (4) either the false statement was defamatory per se or caused the plaintiff special harm. *See, e.g., Chandok v. Klessig*, 632 F.3d 803, 814 (2d Cir. 2011). Compelled self-defamation provides an alternate path to meeting the publication element. Litigants have argued that it permits "a discharged employee [to] sue for defamation even if an employer made the defamatory statement to no one other than the employee if the employer knows, or should know, of circumstances where the employee is later put in a position in which he or she has no reasonable means of avoiding publication of the statement and must repeat such statement; usually when seeking new employment". *Wieder v. Chemical Bank*, 202 AD2d 168, 169-170 [1st Dept. 1994]. New York courts have rejected this approach. *See Phillip v. Sterling Home Care, Inc.*, 959 N.Y.S.2d 546, 548 (2013) ("New York does not recognize defamation via compelled self-publication."); *Wieder*, 202 A.D.2d at 170.

Plaintiffs ask the Court to allow the claim to proceed because the New York Court of Appeals, which has not addressed compelled defamation, would recognize it if presented with the question. Opp. at 22. Several federal courts have had occasion to predict how the Court of Appeals would come out on this issue and have come to different conclusions. Compare *Clemons v. WellPoint Companies, Inc.*, No. 1:11-CV-0084, 2013 WL 1092101, at *16 (N.D.N.Y. Mar. 15, 2013) (concluding New York would not recognize cause of action because self-publication is "inconsistent with the fundamental principle of mitigation of damages" and, therefore, has been 'largely discredited'" and "might visit liability for defamation on every ... employer each time a job applicant is rejected.") and *Van-Go Transp. Co. v. New York City Bd. of Educ.*, 971 F. Supp. 90, 104 (E.D.N.Y. 1997) ("It seems reasonable to assume that the New York Court of Appeals would adopt the doctrine in a form that allowed for liability where, such as in the instant case, there was a high degree of compulsion that required the reporting of the defamatory matter. . . . The court might be more likely to adopt an approach limiting defamation claims where some consent to publication existed to only those claims where plaintiffs could show a lack of control over the publication. *See Schoepflin v. Coffey,* 162 N.Y. 12, 17 (N.Y.1900)."). This Court sees no indication that the Court of Appeals would depart from the intermediate New York courts and recognize compelled defamation.

Vishal's claim fails for another, independent reason. "Courts have been vigilant in requiring plaintiffs to allege when the allegedly defamatory statements were made in order to adequately plead defamation." *Lesesne v. Brimecome*, 918 F. Supp. 2d 221, 224 (S.D.N.Y. 2013) (collecting cases). Plaintiffs do not identify any employer to whom Vishal was compelled to publish. The Second Amended Complaint alleges that "all of the positions [Vishal] *considered* [after his termination from CM], other than a position at Barclays, required him to disclose whether

he had ever been terminated from any prior position for cause". SAC ¶ 184 (*emphasis added*). It further alleges that Vishal, having been terminated from Barclays, where he worked from April 2013 to June 2018[5], "*will now be applying* for new positions in the banking and financial services industry and *will be required* to respond to questions concerning whether he has ever been terminated for cause and will be compelled to answer yes to that question". SAC ¶¶ 189. This lack of particularity is independent grounds for dismissal. *See Kiblitsky v. Lutheran Med. Ctr.*, 922 N.Y.S.2d 769, 774-75 (Sup. Ct.) ("Plaintiff has failed to plead with sufficient particularity the first claim for self-compelled defamation by failing to provide the identities of the potential employers with whom she interviewed and to whom she was allegedly compelled to repeat the defamatory statements, as well as the time and location that such statements were made, thus requiring dismissal of that compelled self-defamation claim") (citations omitted).

The Court therefore concludes that Plaintiffs have failed to state a claim for compelled defamation. This claim must therefore be dismissed.

III.    Plaintiffs' Request to Amend

Plaintiffs request to amend or replead the fraud/ fraudulent concealment (Count 1) and interference with prospective economic advantage (Count VI). However, Plaintiffs had the opportunity to amend their Second Amended Complaint with the benefit of Judge Chesler's several opinions, as well as the letter-briefs that preceded this briefing, and chose not to do so. The instant request does not indicate any additional facts or legal theories Plaintiffs would allege to cure the defects in these two claims. The Court therefore denies Plaintiffs leave to amend the Second

---

[5] If Vishal did in fact self-publish to any potential employer prior to his joining Barclays in 2013, such claim would be untimely under New York's one-year statute of limitations for defamation. *See Lesesne v. Brimecome*, 918 F. Supp. 2d 221, 224 (S.D.N.Y. 2013) ("Defamation actions under New York law are subject to a one-year statute of limitations. N.Y. C.P.L.R. § 215(3).").

Amended Complaint. *See City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 188 (2d Cir. 2014) (determining a denial of leave to amend was appropriate where Plaintiffs already had an opportunity to amend their complaint and likely were on notice of deficiencies in their pleadings).

CONCLUSION

For the reasons above, Defendant's motion to dismiss is **GRANTED**. Plaintiffs' Second Amended Complaint is **DISMISSED**. Plaintiffs' request to amend the Second Amended Complaint as to fraud/fraudulent interference and interference with prospective economic advantage is **DENIED**. The Clerk of Court is respectfully directed to close this case.


**SO ORDERED.**

**Dated: September 30, 2020**

**New York, New York**


ANDREW L. CARTER, JR.

**United States District Judge**